CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellant,
v. THE ILLINOIS COMMERCE COMMISSION *et al.*,
Defendants-Appellees.

Fifth District   No. 5—90—0814

Opinion filed January 29, 1992.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, and Conger & Elliott, P.C., of Carmi (William S. Hanley, Peggy J. Ryan, and Ivan A. Elliott, Jr., of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (James E. Weging, Special Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Fyie & Hawkins, of Fairfield, and Stratton, Dobbs, Nardulli & Lesti-kow, of Springfield (Jay H. Fyie and James Lestikow, of counsel), for appellee Wayne-White Counties Electric Cooperative, Inc.

Randall Rings, of Association of Illinois Electric Cooperatives, of Springfield, for *amicus curiae* Association of Illinois Electric Cooperatives.

JUSTICE HOWERTON delivered the opinion of the court:

The Electric Supplier Act (Act) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 401 *et seq.*) was enacted July 2, 1965, to deal with territorial and customer service disputes between public utilities and electric cooperatives. The Act encourages electric suppliers to enter into service-area agreements delineating exclusive service areas between themselves. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 406.) This case requires us to interpret the service-area agreement between Central Illinois Public Service Company (CIPS) and Wayne-White Counties Electric Cooperative, Inc. (Wayne-White), and to resolve the dispute between them as to which of them has the right to serve Mobil Oil Exploration and Producing North America, Inc. (Mobil), previously Superior Oil Company, in the New Harmony Field in White County.

The New Harmony Field is an oil and gas field divided by Illinois Route 14. Prior to July 2, 1965, the date of the Electric Supplier Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 401 *et seq.*), both CIPS and Wayne-White provided electrical service to Mobil in the New Harmony Field. CIPS served Mobil at locations south of Route 14 under a 1964 contract that stated that CIPS would furnish Mobil "all electricity required." Wayne-White served Mobil at locations north of Route 14 and one point south of Route 14. Wayne-White served other customers in the New Harmony Field; CIPS did not.

In 1968, CIPS and Wayne-White entered into a service-area agreement pursuant to section 6 of the Electric Supplier Act. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 406.) This agreement placed the New Harmony Field within the exclusive service territory of Wayne-White, but consistent with section 5 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 405), it permitted CIPS to continue serving Mobil in the New Harmony Field south of Route 14.

In 1984, Mobil chose to expand its operations and obtain electrical service from only one source. In 1986 Mobil changed its electrical service from Wayne-White to CIPS. CIPS has since furnished electricity to all Mobil locations in the New Harmony Field, including those

Mobil locations north of Route 14 that were previously served by Wayne-White.

Wayne-White filed a complaint with the Illinois Commerce Commission claiming that it had the right to serve Mobil in the New Harmony Field north of Route 14. Relying on the service-area agreement, the Commission ruled that CIPS was entitled to serve only those areas of the New Harmony Field that it served prior to July 2, 1965, *i.e.*, locations south of Route 14. The circuit court affirmed, and CIPS appealed. We affirm.

■ An order of the Illinois Commerce Commission (Commission) will not be set aside unless it is against the manifest weight of the evidence. *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n* (1979), 75 Ill. 2d 142, 387 N.E.2d 670.

■ The Commission correctly determined that CIPS could continue serving Mobil at locations south of Route 14. The question before us, however, is whether CIPS has the right to serve Mobil at locations north of Route 14 that were previously served by Wayne-White. This issue turns on whether the 1964 requirements agreement between CIPS and Mobil is an exception to paragraph 1(b) of the service-area agreement between CIPS and Wayne-White.

The 1964 agreement between CIPS and Mobil states in part:

"For and during the period of not less than five years or the life of the project, whichever is longer, beginning when [CIPS] begins to supply electricity hereunder, such period to begin about December 16, 1964, [CIPS] agrees to furnish [Mobil] and [Mobil] agrees to take from [CIPS] *all electric power required* by Mobil in the operation of [Mobil's] oil producing facilities with connection to [CIPS] line in the center of section 35, T4S, R10E, 3rd P.M., and with metering located in SW ¼, Section 33, T4S, R14W, of 2nd P.M., southeast of Crossville, White County, Illinois." (Emphasis added.)

The 1968 service-area agreement, whereby the New Harmony Field was placed in the exclusive service territory of Wayne-White, provides:

"1. The parties [CIPS and Wayne-White] hereto covenant and agree that each shall continue to be entitled to (a) furnish service to *customers at locations* which each was serving on July 2, 1965, (b) furnish service to *customers or premises which it had agreed to serve under contracts in existence on July 2, 1965 \*\*\**." (Emphasis added.)

CIPS asserts that the Illinois Commerce Commission considered only the "customers at locations" exception and failed to consider the

"contracts" exception to the agreement. It claims that the 1964 contract with Mobil is a contract within the "contracts" exception of paragraph 1(b) of the 1968 service-area agreement because CIPS had agreed to supply Mobil "all electric power required." We disagree.

We find that the 1964 agreement between CIPS and Mobil does not fall within the exception of paragraph 1(b) of the service-area agreement and does not give CIPS the right to serve Mobil at locations previously served by Wayne-White. Paragraphs 1(a) and 1(b) were meant to apply to two different situations. Paragraph 1(a) refers to customers being served at locations prior to 1965, and 1(b) refers to contracts to serve customers in the future, or contracts to serve premises in the future.

The 1964 agreement between CIPS and Mobil was not meant to encompass Mobil's expansion; it pertains only to the amount of electricity supplied to Mobil at locations enumerated in the contract. The 1964 agreement specifies the form of electricity as well as the amount of electricity to be supplied by CIPS. It also appears that before CIPS service was expanded north of Route 14, CIPS and Mobil had entered another agreement in 1985 and that the expansion was not done entirely pursuant to the 1964 agreement. The fact that Wayne-White also was serving Mobil in the New Harmony Field further substantiates our conclusion.

Furthermore, following CIPS' rationale would permit a customer to choose its electric supplier even though service from that chosen supplier would infringe on another supplier's service territory. Such a result cannot be permitted as it would be against the purpose and policy of the Electric Supplier Act of avoiding duplication of facilities and minimizing disputes (Ill. Rev. Stat. 1989, ch. 111⅔, par. 402) and would render service-area agreements meaningless. See *Central Illinois Public Service Co. v. Illinois Commerce Comm'n* (1990), 202 Ill. App. 3d 567, 560 N.E.2d 363.

We find that the order of the Commission is not against the manifest weight of the evidence and affirm.

Affirmed.

HARRISON and CHAPMAN, JJ., concur.